08-3277, Sgt. Jack Algenius v. County of Cook at call. Okay, if you want, you're ready, let's go. Thank you. Ma'am, please report. Good morning. Rights and protections to which... Ask those who you are for. Oh, I'm sorry. My name is Erica Thomas, and I'm here today representing Sgt. Jack Genius. Okay, go ahead. Thank you. The rights and protections to which Sgt. Jack Genius, a civil service employee, was entitled were repeatedly violated by the Cook County Forest Preserve District and the Cook County Employee Appeals Board. Sgt. Genius raised a number of issues in his briefs before this court. However, this argument today will focus on two main areas that he contends requires this court to overturn the Employee Appeals Board's decision. The first and most egregious error arises from the board's failure to address the district's unlawful action of failing to file charges against Sgt. Genius for almost five years after he was suspended without pay. May I ask you just real clear how you are framing that issue, that first issue? In your brief, I believe the way you framed it was that the Forest Preserve District lacked authority. That is correct. Under the civil service rules. That is correct. Not only did the Forest Preserve District lack authority, but that issue was compounded by the board's finding that Sgt. Genius failed to exercise his due process rights. Well, how did you get it before the board? What was the procedural mechanism that you used to get it? Ultimately, after approximately five years, the criminal charges that initiated the suspension against Sgt. Genius were dismissed or nolly-crossed by the state's attorney in Vermillion County. Sgt. Genius then sent another letter demanding that he be reinstated. After a period of time, a letter was returned by the superintendent of the Forest Preserve District to Sgt. Genius saying he would consider his request. That was the first response Sgt. Genius had received during that five-year period, and shortly thereafter, within a couple of weeks, actual written charges that were entitled Notice of Intent to... I don't understand, but how did you get the issue of the back pay before the board? What was the procedural mechanism? We argued that the Forest Preserve District did not have lawful authority to do this... I understand you're arguing, but I don't think you understand my question. No, I don't think I do. Did you file a complaint for breach of contract in some court, and did you file some complaint before the board saying you owe me money because you suspended me without authority? We filed a motion to dismiss initially, alleging latches, and part of the latches was... Wait, wait, let's roll this. Yes. You filed a motion to dismiss what? To dismiss the written charges that were ultimately filed. So how do we get before the board? They file the charges? They file the charges, yes. That is correct, yes. So ultimately, when they do file the charges, that initiates the administrative leg of these proceedings. Did you file some type of a counterclaim before the board for the money? Or did you just argue about it? No, Sergeant Genius filed an immediate response to the charges, yes. Filed an answer? Yes. And we also filed a motion to dismiss, too, alleging the latches, alleging that it was an improper suspension, and that raised the back pay issue. Didn't you also file a grievance with the appeals board? Sergeant Genius, after he initially received the notice of intent to pursue disciplinary charges or whatever they had entitled it, also then filed a grievance because he was unclear about what avenue he was able to pursue at that point, whether it would be through the Civil Service Commission or the Employee Appeals Board. And what happened to that grievance? He received a letter from the attorney for the Employee Appeals Board indicating that that was not the proper venue for his complaint, and it would be remanded or sent to the Civil Service Commission to be heard. Okay. If a person has a civil service employment position and the employer suspends them for a period in excess of their statutory authority and doesn't pay them for that period of time, why do you believe that the remedy is before the Civil Service Commission as opposed to a freestanding lawsuit for breach of contract? Well, Sergeant Genius did pursue a... A mandamus or something? Well, we did file an injunctive action trying to prevent the whole thing from going forward, but that was dismissed and we were told by the district court that the Civil Service Commission was where we should be. Wait, wait, wait. I don't know this fact at all. Tell me what happened here. You filed a claim in the Circuit Court of Cook County? Yes. Yes, we filed an injunctive action seeking to... When? It was after the charges were ultimately filed. So say August of 2001. I'm going to ballpark that. And at that point we filed a claim for preliminary and permanent injunction. And we briefed it, both parties briefed it. The trial court said, well, since they have finally now initiated the action before the Civil Service Commission, that is your proper venue. Yeah, what were you asking for in the injunction? We were asking that the entire proceedings be prevented from occurring. Yeah, at the Civil Service Commission. Right, that is correct. But you didn't file a lawsuit for his pay. Not for his pay at that time. Sergeant Genius did file a federal lawsuit, and I did not represent him on that. That, I believe, was dismissed for reasons that are unknown. And when was that? When was that in this saga? After the charges were filed in 2001? They were certainly pending during the period of the administrative proceeding. I'm sorry, I can't give you more information on that. The rules of the Civil Service Commission of the County of Cook were enacted to protect the rights of employees and provide a concrete guideline of due process for employers to follow. It is uncontroverted that Sergeant Genius was suspended without pay, without written charges, from June 17, 1996 until May 25, 2001, when he was finally served with a Notice of Intent to Seek Discharge. As the trial court found, and this court should similarly find, the district had no lawful authority to suspend Sergeant Genius for almost five years without written charges. The Forest Preserve District did not follow any of the due process rules outlined in the section of the Civil Service Rules that addresses disciplinary action, specifically Rule 9. Rule 9, Section 1, unequivocally states that no employee shall be removed, discharged, or suspended for more than You're not making a claim that this was a due process violation. That's not how you frame this issue. Is that correct? What you've said is, in your brief, that this conduct of suspending him without following the Civil Service Rules was an act outside of their authority, correct? That is correct, yes. And in addition to being in violation of their own rules, you're alleging that his due process rights were violated. That is correct. Are you? Are you? That is exactly my question. Where is that? Where is that? Question mark. Whereas your claim that this was a due process violation, where have you made that argument? We have made it in a variety of ways, I would argue. First of all, under the latches issue, certainly that was part of our argument. And I would argue that the inherent lack of authority to suspend a police officer who clearly has a property right in his pay and in his job, that in and of itself is a due process violation. The question was where did you raise the due process? Under our arguments that the district lacked authority to act in the manner that they did. They failed to provide him with the due process that he was entitled to under the Civil Service Rules. So it's not due process, a constitutional claim. You're not making any kind of constitutional claim. Is that correct? And if you are, show me where exactly you have done that. Well, certainly the fact that these due process rules were provided and they were violated, and I believe we did address in the briefs that it was in fact that violates his constitutional rights, property rights to his employment. And you somewhere in these briefs, the original briefs before the board, at the trial level, here, you've made a federal constitutional claim. I'd like you to show me where. I don't know about a federal constitutional claim. Then what claim are you making? That Sergeant Genius was not provided with the due process under the Civil Service Rules. Okay. So it's not a constitutional claim you're making. You're saying that he was denied his rights under these rules. I guess, yes. I guess that's exactly it. But I think inherent in his denial of the due process under those rules falls a general constitutional due process claim. The board stated in its decision that Sergeant Genius had failed to sufficiently request his due process rights. So what happens if he didn't file amendments? He didn't file a brief contract. Yes. So he had remedies. I disagree that he had remedies. And for a number of reasons. First of all, with regards to the mandamus, I know that was something that the court requested in the supplemental briefs. Sergeant Genius did not feel that mandamus would have been an appropriate remedy to request at that point. First of all, the court is, I'm sure, familiar with the four requirements for a mandamus action. First of all, that there was a clear legal right and duty. The question was, what was the clear legal right and duty? Was it that he had a right to his pay? But how to get to that point, he would have been seeking to require the district not to do a ministerial. To pay him? But it would have required not a ministerial action. Why is it not a ministerial act when the rules say they have no authority to suspend him for more than 30 days, and they suspend him for how long? How long was he without pay? Almost five years. If they had no authority to suspend him for more than 30 days, and they did it anyway, then why isn't it a ministerial act to pay him? Because it would have required the district to make a determination, a discretionary determination on whether or not to file charges, to reinstate him. The charges have nothing to do with it. I disagree. I think it's all part and parcel of the same thing. The charges have nothing to do with their ability to suspend for only 30 days. If they suspend somebody for 90 days and then file charges against them, they've got to pay them for the 60 days, whether they like it or not. Nothing new about this. I mean, it happens with a lot of police departments and municipalities. They simply don't have the authority to suspend for more than 30 days. That's why they want to suspend him and get the hearing over within the 30 days. Well, that's what Sergeant Genius requested. He immediately demanded his due process. He wants the back pay, and we keep asking, what vehicle did he use to get it? He should have sued him. Is it incumbent upon an employee to try and initiate proceedings to have charges filed against him? It's not. When they don't pay you, it's incumbent upon the employee to sue the employer for the money. Well, beyond the fact that I disagree that it was Sergeant Genius's duty here to initiate the proceedings. It was the district's duty. You keep mixing up the charges against him to terminate his employment with his right to pay after the 30-day suspension. You seem to mix those two up. The two have nothing to do with each other. They have absolutely nothing to do with each other. He could have sued them and won the back pay because they suspended for more than 30 days and still have been fired for what he did. And that's what we're maintaining, actually. The question is, you know, you make a claim for this money in the brief, and I keep looking for the procedural mechanism by which you got this before the board, number one. And number two, whether the board had any authority to adjudicate the beginning. That is a question in and of itself. However, with regards to this mandamus, Sergeant Genius was continually lulled into not acting by the district, which, of course, is also part of our latches argument. Representatives of the Forest Preserve District repeatedly told him that if the criminal charges were resolved in his favor, he would be reinstated and given full back pay. So Sergeant Genius was told by a representative that they would do this act, this clear legal right, voluntarily if the charges were resolved in his favor. They ultimately were, and then the district filed the charges. Can I ask you a question on your latches argument? Yes. I understand that the strongest argument you have on your latches argument is as to the, quote, unquote, forged letter to get the badges. Because of the death of Sarah Goose, it wasn't available. But what is your latches argument on the other charges? On the other charges? On the other charges that they separated them for. Well, actually, I would argue that the strongest argument we have is on the other charges. Those charges, you've got to keep in mind the timeline on this case. Sergeant Genius was suspended in 1996. He was told that the basis of his suspension were the criminal charges in Vermillion County. Those charges were for official misconduct or using his position as a police officer to obtain these badges. Ultimately, those charges were dismissed. Ultimately, the board dismissed those charges. Now, for that five-plus year period of time, Sergeant Genius was solely relying on the fact that the case against him, the potential case against him, I guess, on the district's part, was based upon these criminal charges. And then, all of a sudden, he is hit with these other misconduct charges, 10 to 13 years, that it occurred 10 to 13 years previously. How is he prejudiced by that? I think that's what we're concerned about. We understand that the event with Mr. Wilson took place in 1990. Charges were brought against him in 2001, the first time. That is correct. How is he prejudiced by that? Tell us specifically. What is the prejudice? He's prejudiced by it because he had no knowledge of it. He had no opportunity to act. Is there possible that there was physical evidence he could have gained? Could he have gotten phone records had he known about it earlier? Could he have obtained statements? I mean, this is, we don't. Oh, certainly. You're not representing specifically that he would have done differently. Remember, he testified. Basically, he agreed that the event took place in the same way. Basically, the big, you know, outlines of what happened here. What can you point to that shows he was prejudiced by the fact that it took 11 years to charge him? Well, certainly, just the delay of time in and of itself. In his own recollection, he testified that he couldn't recall a few things. Mr. Wilson testified he couldn't recall a few things. There was apparently, we didn't find out some of this stuff until actually during the hearing, there was apparently a witness to Mr. Wilson's initial statement. We were not even allowed to inquire as to who that witness was. We weren't able to get any information about who he was to even try and question him. The board shut the written statement that was given in 96. Is that what you're talking about? That is correct. And apparently, there was a witness to that statement. And certainly, Sergeant Genius had the right to inquire as to the circumstances of how that statement was given, whether there was promises made, that type of thing. But Sergeant Genius wasn't given the information. He couldn't have followed up on that. Additionally, Sergeant Genius argued that how is a charge from 1988 or 1990-91 that some of these charges were alleged? He was serving as a police officer during that whole period of time. How did that constitute cause for discharge? It clearly did not detrimentally affect the Forest Preserve District Police Department during that period of time. So how, 11 to 13 years later, did that all of a sudden constitute cause for discharge? So certainly, Sergeant Genius did not have an opportunity to gather the evidence that he potentially could have gathered. I mean, 10 years after the fact. And keep in mind, this was in the early 90s. It's not as if everything was computerized. It's not as if things were kept and available as they are now. Things are much different now than they were then. And Sergeant Genius was, quite frankly, blindsided by those charges. And that in and of itself is inequitable and unjust. I'll give you a little time on rebuttal. Let us hear from the panel. Okay. Thank you. Thank you. Good morning. And if it would please the Court, my name is Kerry Horvath, and I represent the Forest Preserve of Cook County in this particular cause. Could I ask a series of questions? It's real groundwork here to understand what happened here and what the rules are. I think we have to know what the rules are. Excuse me. We know that when originally he was suspended without pay in 1996, Yes. the Service Commission and its rules applied to him. Yes. And then we know that nothing occurred in terms of process until 2001, correct? Yes. Now, in 2000, the Cook County Code was amended to include the Human Resources Ordinance. And under section 44-1, 44-48, the code says, effective April 5, 2000, abolishment of the Civil Service Commission pending, and then it says it's abolished, and it says, all disciplinary matters pending before the Civil Service Commission on the effective date of this ordinance shall be continued for disposition pursuant to the rules of the Civil Service Commission, except that such matters shall be heard and decided by the employee appeals board. So as of April 5, 2000, there were no charges pending, correct? As of April 5, 2000, no, there were no formal charges pending. And so when charges were filed for the first time, Yes. they were filed, where were they filed? They were served on Mr. Genius, and my understanding of what happened was that this matter was then treated by the parties involved at the employee appeals board as though it were a civil service matter. In fact, it was filed with the Civil Service Commission. Correct. And the process was under the Civil Service Commission. Yes. In fact, everybody was entitled, all the pleadings were Civil Service Commission. Yes. However, you agree that that was inappropriate. The rules that did apply in 2001 should have been human resources. The rules of the Human Resources Bureau. And when I researched the rules with respect to the disciplinary process, with what I can represent to this court, and Your Honor, I believe, has probably reviewed those rules, is that with what appears to be one exception, the same process would have ultimately taken place and we would have had a hearing before the employee appeals board. However, there is a different procedure involved. Very different. But the statements of charges get served. The employee has an opportunity to respond. No, wait. Let's go back. There's a different process. Yes. I mean, the civil service. Correct. In terms of due process. Absolutely. Two different, you know, approaches. The word, for example, appeal, appears in the human resource ordinance. Yes. It does not appear in the Civil Service Commission, correct? Correct. So when the board found that he could not raise the issue of back pay because he did not appeal, that would not be correct under the Civil Service Commission rules, correct? That word, appeal. Correct, Your Honor. You're absolutely correct. That language comes from the post-2000 structure. The language of the board's decision with respect to appealing his reinstatement or back pay? Mm-hmm. They used the word appeal. They did use the word appeal. And they said he did not appeal, therefore he could not raise the issue of back pay. Correct. But the word appeal does not appear in the Civil Service Commission. I cannot take issue with you, Your Honor. You're correct on that point. So they're mixing up the two ideas. I believe, Your Honor, at the outset, when the matter was presented, the attorney for the Employee Appeals Board determined, for whatever reason, that the matter should be heard as a civil service matter. And, in fact, I believe this court, proceeding in 2005, for whatever reason, looked at this as kind of like the last case ever that was ever processed under civil service. I might be a little familiar with that case. Pardon? I'm a little familiar with that case. I'm sure you are, Your Honor. In that no one ever raised an issue that there were new rules. Your Honor, I didn't see that in the opinion. But what I'm saying is that somehow this case became or was treated as a civil service case, proceeded as a civil service case, and the ultimate hearing by the Employee Appeals Board, they had replaced the Civil Service Commission. But I believe the way they conducted their hearing was actually the same, although the procedures under the new ordinance, the Human Resources Ordinance, were different. Can I ask you a question? I just want to cut to the chase of something. Certainly. Civil Service Commission is a creature of statute. Is that correct? Yes, it is. It only has a jurisdiction to do what the statute says it can do.  It has no other powers. Human Resource Bureau is also a creature of statute. It's a creature of the ordinance of the county. If you filed this case before the wrong bureau, then where did that bureau get the jurisdiction to dispose of it? Where did it get the power? Now I'm not talking about personal jurisdiction. I'm talking about subject matter jurisdiction. Where did they get the subject matter jurisdiction to hear this case? Certainly it can't be given to them by some lawyer. I cannot argue that point with you, Your Honor. The only thing I can imagine that happened is because the action was initiated in 1996 when Mr. Genius was suspended. And then when his criminal process was completed and the district was served with the request to reinstate him by Mr. Genius, they then took the next step and filed the formal charge and conducted a pre-termination hearing and then ultimately got to the filing of the charges with the commission. At that point in time, there was no longer a civil service commission. I cannot say anything but that because that is a matter of law. But the Employee Appeals Board conducted the matter as though it were a civil service proceeding. Except ultimately their decision is entitled Employees Appeal Board. That is correct. And I found one example where sometimes, I mean, it's just a mess. All right, let me ask you this. Let's go into this. So back in 1986, at least we know that's when the regime of the civil service commission. I'm sorry, Your Honor. The regime of the civil service commission. When they suspended him without pay. Yes. We know that was. We got that correct. Okay. Tell us about Section 1 and Section 2 of the disciplinary action and how Section 1 and Section 2 work. Section 1 is the initiating act, and it says that an officer or employee of the classified service or no officer shall be removed, discharged, reduced in rank, or suspended for more than 30 days except for cause, and upon written charge or charges filed in the office of the commission. Any charge or charges shall be, yes, filed in the office of the commission. No charges were filed against him in 1996. No charges were filed against him in 1996. What occurred in 1996 was that in March of 1996 he was put on administrative leave because of the investigation that was being undertaken. I believe it was May 24th of 1996 he was informed by his then chief that his chief intended to terminate him and that he had an opportunity if he cared to, to have an internal conference with the department head of his chief to discuss it before any type of discipline was imposed. Approximately a week later there was a correspondence between the attorney for the Forest Preserve District, Carl McCormick, and Mr. Genius's attorney. In which the letter said, if you will agree to waive all of your rights under the Civil Service Commission Act, Section 1 and Section 2, then we will not proceed. And he refused to sign that letter. That's correct. You told us later that his avenue for a remedy, when the district seems to have apparently violated Section 1, you told us in your supplemental preview that his remedy was Section 2. How does that work? I don't understand. The way we interpreted it was he should at a minimum have requested a hearing. I asked you, we asked you in your brief, you wrote he cannot raise this issue because he did not follow the rules and regulations, period. We asked you, tell us what rule and regulation he did not follow, and you told us Section 2. Section 2. We believe he should have requested a hearing at that point. Is that what Section 2 says? Well, Section 2 says that the person sought to be removed will have written notice of any charge or charges. And I cannot say to you that he had notice of charges, although the documentation that had been served on him certainly informed him of what was going on. How about such charge? Doesn't that refer to Section 1 that talks about a charge or charges as to be filed in the office of the commission? Yes, it does, Your Honor. And then it says he can request a hearing with respect. Yes, to that. After they've been filed. After they've been filed, yes. And so they were never filed. Those charges. So he had no remedy under Section 2. Well, we believe he could have asked the commission for a hearing. We believe he could have. Where does that come from? Your Honor, it doesn't come specifically from Section 2, but he could have done that. And short of that, he could have filed, or long of that, he could have filed an action in the Circuit Court of Cook County for a mandamus. I'm going to ask you one. But, again, specifically I can't. The issue that we've got here is the Board found that whether or not Section 1 was violated, they didn't put it that way, he did not pursue a remedy. Correct. And I have asked you where in Rule 9 is there a remedy for him? And you cannot point me to one. Is that correct? That is correct, Your Honor. Under Section 2, there is no direct remedy for what took place. I cannot state otherwise to this Court. Just addressing, and I believe in the Apollon's brief, they did attempt to raise a constitutional due process argument. And in terms of the constitutional due process argument, I think we can answer without any equivocation that there was no constitutional violation of Mr. Genes' due process rights. Loudermill, the case that was raised, and it was part of one of the questions that this Court posed to us, dealt with pre-termination hearings specifically. The case that really controls this type of setting would be the case of Gilbert v. Homar. And in that case, we had an arrest, we had an indictment of a police officer, and the Gilbert court found that because of the fact of the arrest and because of the fact of the indictment, they were assured that the suspension was not baseless or unwarranted, basically finding that the factor that the suspension might have been an erroneous deprivation was removed by virtue of the arrest and indictment. Can I ask you the next question? Certainly. You said the alternative, then, since you conceded that there's nothing in the rule that gave him an avenue for a remedy. You've argued here that he could have filed a lawsuit. Yes. And he didn't. He did not. And I think that's very clear under the Jaworski case, that he could have filed for mandamus. And the fact that he didn't, why is he barred from ever raising this argument again? Why does that mean that, therefore, when the charges were filed and he did have his first forum to be heard, he raised it there? Why couldn't he raise it there? When you say he raised it there, I think the argument was not raised in a formal plea. It was raised, if I'm not mistaken, in an opening statement and in a closing statement in terms of the question of back pay, or back pay for the period of time he had been suspended between May of 1996 and I believe it was August of 2001 when the formal charges were filed. There was no pleading. In fact, I have my copy of the record of the civil service proceedings, and I can't find anywhere the motion to dismiss that's been referenced.  The motion to dismiss is not a vehicle by which you raise a claim of your own. So I would get back to the question, was there ever, ever a pleading file that could be determined as some type of a counterclaim before this administrative agency seeking back pay? None. What jurisdiction would this agency have over the back pay issue anyway? If the civil service commission or the employee appeals board made a decision, made a determination that the charges should not be sustained, then the remedy that Mr. Genis would have would be his back pay. What this board said was you didn't raise this at any point in time, and so therefore we're not going to deal with it at this point in time. Is that what they said? I don't know. Well, I'm paraphrasing their determination, but they did say, Your Honor, Mr. Genis has also requested an award of back pay from the date of his suspension. Yes. This is ultimately the appeals board decision. He's requested an award of back pay, and then they say we decline this request. Yes. He never appealed the suspension of the civil service commission, and we've agreed that that doesn't make sense. He did send a letter to the chief of police asking for a hearing, and then they go on to say that letter was insufficient, and then they say he could have filed for mandamus and chose not to. But his letter is not a request for back pay. Somehow in this hearing, Boyle says he requested back pay, and they denied him that. I believe it was asked for through argument of counsel. That was the way it was presented. It was an opening remark, and I believe another closing remark. So can you one last thing answer my question? If he chose, why was he barred from raising this issue at the civil service commission when it was the first forum he had to challenge these charges against him? Why was he barred from raising it there because he had not earlier filed a mandamus? Why was he stopped? What kind of idea is that? I mean, it's not an exhaustion of remedies. The trial court said this was a failure of exhaustion of administrative remedies, and that's wrong too because you just told us that there is no administrative remedy for this. So that idea doesn't work either. So why couldn't he raise it in the civil service commission when the charges were multiple? In terms of a remedy, if they had found that he was not properly or he was not subject to discharge, then I think he would be able to claim his back pay. But they determined they looked at that issue separately in addition to the way they dealt with the charges, and they determined that he hadn't raised that before them. I think that's how they looked at it. And if I'm looking at their decision correctly, they said he did not request a hearing. Now, that's how they reached their conclusion. Could I ask you a fact question? Certainly. So when the charges were finally filed, looking at the charges about Mr. Wilson. Looking at the charges? The charges concerning Mr. Wilson. Yes. The charges, which I have right here, say that while on duty, certain events took place. And then the second charge was using the keys. Using, is that the right word? Using the keys, is that the right word? Certain events, correct? This is with respect to the sexual misconduct? Yes. What were the charges brought against him? On duty. While on duty, yes. And what's the second one? It says utilizing Forest Preserve District keys. He entered closed Forest Preserve District keys. What was the evidence regarding being on duty? Other than the fact that they indicated that Mr. Wilson stated that he was shown a badge. That he was told by Mr. Genius that he was a police officer. And that there was a police scanner. And that Mr. Genius then gained. But on duty. Well, Your Honor, he represents himself as a police officer. And he gains access to Forest Preserve District property. He is acting. Is he on duty? There's no other evidence to show that he was actually working around the clock. So the first charge was that he was on duty. The second one was that he utilized a key. Yes. What is the evidence that he utilized a key? I believe Mr. Wilson testified. All he testified was that he got out of the car and opened the gate. He did not see a key. My recollection of the record is that. He said he did not see a key. And then he was asked. And you don't know if keys were used or not to gain access. I do not know if the link, no offense, was a lock or just a hand lock. Link, no. I don't know if it was a lock. So he's saying that he doesn't know if there was a lock. And he says there was no key. That's what I'm indicating is I don't believe he testified he saw a key. So those are the two charges against him. How does the board sustain those? What is your argument to say? The board says talking about badge and identification. Was he ever charged with misusing his badge and identification? No. I believe they looked at the totality of the evidence with which they were presented and determined that the conduct that, first of all, they believed Mr. Wilson's testimony over Mr. Genius' testimony on the credibility issue. They believed that what was done was unauthorized and was inappropriate for an individual of Mr. Genius' position. Did they find him to be on duty? No. No, no, no. Let's see. So he was charged with two things, specific violence after all these years. He was charged with two ideas, being on duty and using a key. And you agree there was no evidence to support either one of those charges? I don't agree. I do not agree that there was no evidence to support those charges, Your Honor. I believe the testimony indicated that he had his badge, he had a scanner, he was in a vehicle that wasn't identified specifically as a police vehicle, and that he gained access to Forest Preserve District property and drove onto the property and committed a sex act on the property. There was evidence to support those charges, yes. Does it make any difference that those were not the specific charges brought against him? I think the proof still, the proof, when all is said and done, the proof is sufficient to substantiate the fact that this gentleman had a substantial shortcoming. He was charged with a substantial shortcoming. Well, that's what the, Your Honor, I think that's the standard, though, that has to be weighed when determining if discharge is appropriate. And they looked at this and they said, what was proven here? In conjunction with the forgery, what was proven here in conjunction with the forgery was sufficient. It's almost like, you may not be able to prove every specific act, but this is not a criminal charge. This is a civil proceeding, it's an investigation, and they found enough based upon their investigation, which is what a civil service proceeding is. They found enough there to clearly substantiate the charges, these charges that were filed against Mr. Genius. The other thing I'd like to point out, and this is important with respect to this forgery thing, because in the record, Your Honor, Mr. Genius indicated that he used that document, that letter, supposedly signed by Mr. Sirigusa two times. Once, sometime around when it was authored in 92, and then again in 1994 or 1995. At that point in time, and I think this is important, Your Honor, and there was a filing in the trial court, Mr. Sirigusa was dead. He died in October of 1992. Now, Mr. Genius said he used this letter again in 1994 or 1995. He had trouble recollecting. Well, the bottom line here, regardless of what kind of recollection he had, he used a letter, supposedly, of a dead man? Even if he's claiming that Mr. Sirigusa had signed this document? That reflects directly on his character. Is the letter dated? Pardon me, Your Honor? Is the letter dated? The letter that was dated was dated June of, I believe it's June 3, 1992. 1992. So any recipient of that letter in 1994 would know he's receiving a 1992 letter. It's got a date on it. Well, I understand that, Your Honor. It didn't redate it. No, but what he said was he used it twice. He tried to say that Mr. Sirigusa had signed this letter, okay, and he was using it in order to basically convince this company in Danville Mr. Sirigusa was alive on June 3, 1992, wasn't he? Yes, he was, Your Honor. So he's not suggesting that the man was dead at the time the letter was dated? Not at that time, but the second time. My point is this. Why would he use the letter of a dead man in 1994 to convince a company in Danville, Illinois, that it was okay for them to buy badges from another company somewhere else? That's my point, Judge. That goes as well to the establishment that this document, from its very beginning, was a fraudulent or forged document. And I believe the commission also found that to be the case, that this was a fake. And that charge, too, was sustained. Well, the problem with that charge is you bring this charge in when, 2001? Yes, they were brought in 2001. The authenticity of the June 3, 1992 letter was clearly an issue. And Sirigusa had been dead for how many years? Sirigusa died in, I believe it was 1992, Your Honor, October of 1992. So isn't he at somewhat of a disadvantage? He says it's valid. There's evidence that it may not be valid. And the guy whose signature is on this thing is now dead. And you've delayed nine years in bringing the charge. When you say he says it's valid, he testifies it's valid, but the facts that accompany this says, as you know, it's a fake. Well, there's a question. He testified it was a joke. His testimony was that the facts that accompany it was nothing but a joke.  And a finder of fact may very well find that his characterization that it was a joke is not a truthful statement. But the fact of the matter is the proof of the pudding would have been in the testimony of Chris Sirigusa. Chris Sirigusa has been dead since 1992, and the charge isn't brought until 2001, nine years later. The question is, has he been prejudiced by that nine-year delay? You know, one could argue that if the only person that can prove the authenticity has been dead for nine years, he has been prejudiced. I don't believe that he was prejudiced, Your Honor. Mr. Genius introduced into evidence other documentation that had Mr. Sirigusa's signature on it, and that documentation and the exhibits, there were two exhibits, were used and compared by the Employee Appeals Board, and they made a determination that this signature was not the signature of Sirigusa. How do you compare a facsimile with a real signature? How's that done? Your Honor, I think they looked at what they saw, and they made a determination. But they can't judge depth of stroke.  They can't judge depth of stroke. They can't judge anything, because they got a fact signature, and there was no actual testimony here that they were the same signature. My only question is, has he been prejudiced by the delay? I don't believe he was prejudiced in any way by that delay, Your Honor. All right, let's hear a little rebuttal from your opponent. Thank you very much. Thank you. Thank you. I would like to address a couple of issues that were raised by the Court. First of all, I believe Justice Hoffman had questioned under what mechanism Sergeant Genius had raised this issue of back pay. Well, the Civil Service rules do not provide for Sergeant Genius to file a counterclaim or anything of that nature. They just provide that he is entitled to be heard in his own defense. That is what he did. That is when he raised it, when he was finally given an opportunity to raise it. He raised it in a motion to dismiss. He raised it in an answer to the charges. But it's not a defense. It's not a defense. It's a claim. No, I know. He raised it in the answer to the charges as well. So the issue is the Civil Service Commission says we're not hearing this. And my question was aimed at the question of whether they should have heard it at all, ever heard this. Didn't this belong in the circuit court? Did it breach a contract or remain in the section? Well, the remedy for a wrongful suspension or, in this particular case, case law supports it. And certainly it's well established that the remedy would have been reinstatement if the charges were not shown, back pay, and appropriate interest as the board would find. So that is the remedy that Sergeant Genius was comfortable in knowing that the Civil Service rules provided. They suspended him for five years for the charges that he was, for the matters for which he was ultimately charged with. They suspended him for something else. Well, that is right. You know, this is kind of like, you know, why is it there? That's what Sergeant Genius has maintained this whole time, was that he was under the impression he was suspended for these criminal charges, but yet when it all came out, it wasn't for that at all. So then why was the back pay issue before the board when they did ultimately file the charges? Because it was at that point that it was made clear that the suspension was unlawful and that Sergeant Genius was entitled to the back pay. One of the charges that was filed was the same charge that was the basis of the criminal case, but the board there did not sustain that. That is correct. They dismissed it, found that essentially Sergeant Genius had a badge collecting hobby and that he was acting to pursue his hobby. It wasn't misconduct in any way, shape, or form. So yes, although that was part of the charges, what he was ultimately discharged for was not for those criminal charges. So your argument is because they dismissed that charge for which he was suspended, that they should have ordered back pay at the same time they dismissed him? Yes. Now talk to me about this jurisdictional problem. Isn't this in the wrong place? Sergeant Genius attempted to get his process on a number of avenues, as we referenced in our supplemental brief. When he was ultimately notified by the superintendent, he wasn't notified under what authority they would be proceeding, simply that they were intending to discipline him. And Sergeant Genius then received a notice of a pre-disciplinary hearing. At that hearing, Sergeant Genius was represented by counsel. Counsel repeatedly requested, under what authority are we proceeding today, whether is it the Appeals Board, is it the Civil Service Commission, what are we doing here? And each time it was raised, the attorney for the Forest Preserve District took it as an argument, said if you have a question with our authority, we're not going to answer this today, this is simply an arraignment on your charges. Ultimately, Sergeant Genius received a letter from the attorney for the Employee Appeals Board. Days before that, he filed a grievance with the Employee Appeals Board. And the Appeals Board came down with an opinion, saying we are without jurisdiction to hear your case, you must file this with the Civil Service Commission. And that's what Sergeant Genius did. He had waited over five years for due process.  And he pursued that avenue with everything that he possibly could have pursued it with. And that is why we're here today. Just briefly, I would like to address the Gilbert case that counsel has cited in his supplemental brief. In that case, an officer was arrested for a drug felony. He was immediately suspended without pay, and the drug charges were dismissed approximately five days later. The officer's suspension continued after the charges were dismissed, and less than one month later he was provided with an opportunity to tell his side of the story. He was then demoted within 30 days of his original suspension. I would argue that this case is not necessarily applicable to Sergeant Genius's case for a couple of reasons. First of all, in Gilbert, the officer was given an opportunity to meet with his superiors and tell his side of the story within three weeks of being suspended. And the holding in the Gilbert case was as long as a suspended employee receives sufficiently prompt post-suspension hearing, the lost income that he suffers without getting due process prior to his suspension is relatively insubstantial. Well, Sergeant Genius didn't get a prompt post-suspension hearing. Five years after certainly could not be considered prompt. Further, the Gilbert suspension without charges was less than 30 days from his initial suspension to the time of his demotion. The Gilbert officer received back pay at the rate of a police officer and not at the rate of the groundskeeper that he was eventually demoted to. And the court noted specifically that an immediate suspension in such a case, and certainly I'm not quarreling with the fact that a police officer facing criminal charges, should probably be removed from his position. But in this case, the court noted that an immediate suspension is deemed sufficiently important to justify a brief period of suspension prior to affording the suspended employee a hearing. Now, counsel also cited the Santana case, which was a Connecticut case. I would like to point out two specific issues that make that not applicable to the case at bar. Footnote 22 of that case specifically provides that there was a collective bargaining agreement that provided that an employee was not entitled to a hearing until the criminal charges had been resolved. So that employee had bargained away his rights. That is not the case that we've got here before us. Further, the collective bargaining agreement in Santana specifically allowed that an officer could be suspended without a hearing if he was facing felony charges. And again, that is not the case here. There was no collective bargaining, no rules, no provisions, nothing that would have allowed that. Thank you very much for your attention.